IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| HOLLI TELFORD,<br><br>                Plaintiff,<br><br>   vs.<br><br>MONTANA LAND EXCHANGE; THE ESTATE OF MICHAEL STOSICH; BOB YOUNG, FIRST AMERICAN CORP., aka FIRST AMERICAN TITLE INSURANCE, aka FIRST AMERICAN PROPERTY AND CASUALTY INSURANCE AGENCY; SOUTHERN MONTANA TITLE; VIVIAN DEHL; R. THOMAS BAILEY; MOTNAEJ INVESTMENTS; STAR VALLEY RANCH TOWN; SARA BENNETT, and DOES 1-10 INCLUSIVE,<br><br>                Defendants. | CV 19-2-BU-BMM-JCL<br><br><br>FINDINGS AND RECOMMENDATION |

## I.   Introduction

Plaintiff Holli Telford, appearing pro se, filed her First Amended Complaint which the Court will now review. The Court previously granted Telford leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a). Consequently, section 1915 requires the Court to conduct a preliminary screening of the allegations set

1

forth in the litigant's pleading. The applicable provisions of section 1915(e)(2)

state as follows:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that–
>
> > (A) the allegation of poverty is untrue; or
> >
> > (B) the action or appeal–
> >
> > > (i) is frivolous or malicious;
> > >
> > > (ii) fails to state a claim on which relief may be granted; or
> > >
> > > (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

The Court will review Telford's amended pleading to consider whether this

action can survive dismissal under the provisions of section 1915(e)(2), or any

other provision of law. *See Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1138, 1142

(9th Cir. 2005).

## II.    Background

Telford's pleading recites a long story of her trials and tribulations relative

to her real estate ownership, financial matters, criminal prosecutions and associated

complications in her life dating back to 1994. She contends her difficulties were

orchestrated by Defendants through two different criminal prosecutions against her

in 2006 through 2009. In general, Telford alleges Defendants abused those criminal proceedings to steal and convert certain of her real and personal property located in Utah, Wyoming and Montana.

In 1994, Telford acquired a parcel of real property in Utah, and she rented the property to a tenant. She arranged various loan transactions secured by that property which ultimately failed, and she filed for bankruptcy. At some unidentified time, the secured party on the loan transactions pursued judicial foreclosure on the property. Telford apparently failed to disclose the foreclosure action in her bankruptcy proceedings, and she was charged criminally for that failure and she was detained on that criminal charge for 3 years.

While Telford was in custody, the tenant and the secured party allegedly colluded to fraudulently secure a quiet title judgment transferring the property to the tenant. The tenant then transferred the property to Defendants Thomas Bailey and Motnaej Investments. Telford alleges Bailey and Motnaej Investments were part of the conspiracy to transfer the property to them.

In February, 2006, Telford purchased a 5-acre parcel of real property in Lima, Montana from Michael Stosich. The purchase contract was prepared at Defendant Montana Land Exchange's office in Lima. Telford obtained an "extended title insurance policy" for the property from Defendant Southern

Montana Title. The real estate closing date was March 7, 2006, but she complains that no deed to the property was issued to her. Therefore, Telford directed Defendant Bob Young at Montana Land Exchange to return her purchase funds to her, but her funds were not returned to her.

At some time near the time of the purchase transaction for the property in Lima, Montana, Telford was arrested for driving in Utah without a drivers' license. She was detained in jail on that charge.

Telford alleges that while she was in custody, various Defendants fraudulently modified the real property purchase contract between Telford and Stosich to her financial detriment. Telford's pleading lists ten specific matters supporting her allegation that the purchase contract was fraudulently modified without her consent.

Telford states that the deed to the property in Montana was not delivered to her, but instead was issued to convey the property to Stosich's daughter, Defendant Vivian Dehl, who was allegedly a member of Stosich's conspiracy to steal the land from Telford. But in 2008, Stosich purchased the property back at a sheriff's sale based on a state court judgment Stosich obtained against Telford in July, 2007. Telford indicates that state court judgment was based upon her default in that state

court action, and she alleges the default was improperly entered and the judgment was unlawfully and fraudulently obtained.

Defendant First American Title Insurance is the successor in interest to Southern Montana Title. Telford contacted First American Title Insurance to obtain a copy of the title insurance policy she had previously purchased. But Defendant Sara Bennett, apparently employed by First American Title Insurance, refused to send Telford a copy of the policy.

From 2012 to 2014, Telford lived on residential property at Defendant Town of Star Valley Ranch in Wyoming ("Star Valley Ranch"). Telford states she was the beneficiary of disability trust proceeds that existed based on her medical conditions, and the trust apparently provided funds for her residence in Star Valley Ranch.

Telford apparently experienced adverse living conditions in Star Valley Ranch. She alleges the officials of the town unlawfully harassed her and made her living conditions difficult for her with respect to snow removal near her driveway, street sanding in the winter, and the issuance of parking tickets to her. She alleges Star Valley Ranch refused to make accommodations for her disabilities.

In October, 2013, a significant storm caused extensive damage to Telford's residence in Star Valley Ranch. Telford had to vacate the property in 2014, but she

complains Star Valley Ranch continued to charge her for her water bills. She contends all of the Star Valley Ranch's conduct created a hostile housing arrangement for her.

Telford purports to advance eleven causes of action in her First Amended Complaint. But the Court finds her ninth, tenth and eleventh causes of action simply state as follows: "For abuse of process, conversion, and breach of the covenant of good faith and fair dealing against all Defendants." (Doc. 10 at 35.) Telford did not present factual allegations in support of these three stated causes of action. Therefore, the Court finds the causes of action do not state any claim for relief, recommends they be dismissed, and will otherwise disregard these last three causes of action.

Telford advances several claims for relief under federal law. Her First Cause of Action asserts Defendants are liable under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. Her Second and Third Causes of Action assert Defendants are liable for violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* The Fourth and Fifth Causes of Action allege Star Valley Ranch violated her rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and violated her rights under the Rehabilitation Act, 29 U.S.C. § 794.

6

Telford additionally asserts various claims for relief under Montana law. Her Sixth Cause of Action requests judgment declaring that the real estate purchase contract she entered with Stosich is void for several reasons asserted in her pleading.

Finally, Telford's Seventh Cause of Action and her Eighth Cause of Action assert all Defendants are liable for actual fraud and for violation of her right to privacy, respectively. In those two causes of action Telford recites principles of law relative to the legal claims, but she does not present any factual allegations in support of either cause of action. (Doc. 10 at 33-35.) Therefore, the Court finds the two causes of action do not state a claim for relief, recommends they be dismissed, and the Court will otherwise disregard those two causes of action.

Telford's federal claims invoke the Court's federal question jurisdiction under 28 U.S.C. § 1331. Telford's remaining claims are advanced under Montana law, and the Court possesses supplemental jurisdiction over those claims as provided in 28 U.S.C. § 1367(a).

## III.    Discussion

Because Telford is proceeding pro se the Court must construe her pleading liberally, and the pleading is held "to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *See also*

*Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Although the Court has

authority to dismiss a defective pleading pursuant to 28 U.S.C. § 1915(e)(2),

> a district court should grant leave to amend even if no request to amend the
> pleading was made, unless it determines that the pleading could not possibly
> be cured by the allegation of other facts.

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*,

58 F.3d 494, 497 (9th Cir. 1995)).

## A. RICO

Telford's First Cause of Action is pled as a claim under RICO at 18 U.S.C. §

1962(c) which provides as follows:

> It shall be unlawful for any person employed by or associated with any
> enterprise engaged in, or the activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or indirectly, in the conduct of
> such enterprise's affairs through a pattern of racketeering activity or
> collection of unlawful debt.

18 U.S.C. § 1962(c).

To succeed on a RICO claim under section 1962(c) "a plaintiff must show

'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

activity[]'" that damaged the plaintiff's business or property. *Rezner v. Bayerische

Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) (quoting *Sedima,

S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). The factual allegations must

plausibly support each element of a RICO claim. *Eclectic Properties East, LLC v.

*The Marcus & Millichap Company*, 751 F.3d 990, 995-997 (9th Cir. 2014). And the allegations must establish that each defendant personally conducted, or participated in the conduct of the enterprise that engaged in the pattern of racketeering activity. *Committee to Protect Our Agricultural Water v. Occidental Oil and Gas Corporation*, 235 F. Supp. 3d 1132, 1172 (E.D. Cal. 2017). Absent factual allegations plausibly supporting each element of the RICO claim, it is subject to dismissal. *Eclectic Properties East*, 751 F.3d at 1000.

The "enterprise" element of a RICO claim requires specific factual allegations. Section 1962(c) requires that the "person" liable under RICO and the "enterprise" be two separate and distinct entities. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). The defendant "person" must have conducted, or participated in the conduct of, the "enterprise's" affairs, not just the person's own affairs. *Id*. at 162.

RICO defines an "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals *associated in fact* although not a legal entity[.]" 18 U.S.C. § 1961(4) (emphasis added). "The existence of an enterprise [...is] a separate element which must be" established, and it must be an entity or group that is "separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452

9

U.S. 576, 583 (1981). *See also Odom v. Microsoft Corporation*, 486 F.3d 541, 549 (9th Cir. 2007) (en banc). The "enterprise" is the actor, and the "pattern of racketeering activity" is the actor's activity. *Odom*, 486 F.3d at 549.

To establish the existence of an "enterprise" comprised of a "union or group of individuals *associated in fact*", a plaintiff must show that the individuals are "a group of persons associated together for a common purpose of engaging in a course of conduct[,]" that the group is an "ongoing organization, formal or informal," and that "the various associates function as a continuing unit." *Odom*, 486 F.3d at 552 (quoting *Turkette*, 452 U.S. at 583).

The requisite "common purpose" is a purpose to engage in a course of conduct. *See Odom*, 486 F.3d at 552. "[A]n association-in-fact enterprise must have […] a purpose," such as a common "venture," "undertaking," or "project." *Boyle v. United States*, 556 U.S. 938, 946 (2009). It is an association of people with "a common interest." *Id*. The facts pled in a complaint must demonstrate all the participants acted with the same purpose in mind pursuant to a unified agenda. *Committee to Protect Our Agricultural Water v. Occidental Oil and Gas Corporation*, 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017).

Also "[t]o show a common purpose, plaintiffs must allege that the group engaged in enterprise conduct distinct from their own affairs." *Committee to*

*Protect Our Agricultural Water*, 235 F. Supp. 3d at 1173. The "common purpose" element is not satisfied by facts demonstrating the individual participants conducted only their own ordinary business affairs and purposes. *Id.* at 1175. *See also Shaw v. Nissan North America, Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016) (noting that routine commercial relationships do not satisfy the "common purpose" requirement). If factual allegations suggest individuals associated only in a manner directly related to their own primary business activities, and they do not identify a common purpose separate and apart from the participants' ordinary business affairs, then the allegations do not demonstrate the requisite "common purpose." *Shaw*, 220 F. Supp. 3d at 1056.

In view of the foregoing law and definitions, the Court finds Telford's First Cause of Action contains no factual allegations plausibly suggesting an associated-in-fact enterprise existed. Telford's allegations are conclusory and without the presence of supporting specific facts. She asserts all Defendants "created an associated in fact enterprise[,]" and they "constituted an associated in fact enterprise[,]" but Telford's First Cause of Action does not provide facts to support the assertions. (*See* Doc. 10 at 15.) The cause of action does not factually describe, or expressly reference, a common purpose or undertaking, or common interest shared and jointly pursued by all Defendants. The cause of action does not present

facts plausibly demonstrating all Defendants acted with the same purpose in mind pursuant to a unified agenda. And Telford's allegations do not plausibly demonstrate all Defendants engaged in enterprise conduct that was distinct from their own individual, ordinary business affairs.

Based on the foregoing, the Court finds Telford's allegations do not present facts demonstrating it is plausible that Defendants were all associated in fact so as to constitute an enterprise for purposes of a RICO claim. Although the Court has not considered the remaining elements of a RICO claim, absent allegations supporting one of the four elements – here the "enterprise" element – then the RICO claim is subject to dismissal. *Eclectic Properties East, LLC v. The Marcus & Millichap Company*, 751 F.3d 990, 1000 (9th Cir. 2014). Therefore, Telford's RICO claim should be dismissed.

### B. Fair Housing Act

Telford's Second Cause of Action alleges all Defendants are liable for violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* Specifically, she alleges all Defendants, except "the First American Defendants", constructively and unlawfully evicted her from her various real properties because she had complained to the United States Department of Housing and Urban Development

("HUD") about Defendants' conduct, all purportedly in violation of 42 U.S.C. § 3617. (Doc. 10 at 28-29.)

The applicable Fair Housing Act retaliation provision states as follows:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

A retaliation claim under the Fair Housing Act requires a plaintiff to plead facts showing (1) the plaintiff engaged in a protected activity as specifically listed in section 3617; (2) the defendant subjected the plaintiff to an adverse action; and (3) a causal link exists between the protected activity and the adverse action. *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2014).

Upon review of Telford's pleading, it appears the only complaint she made to HUD was a complaint she filed against Star Valley Ranch when it allegedly refused to remove snow from Telford's driveway, failed to put sand on the snow-covered roads, or issued parking tickets to her. (Doc. 10 at 14.) The Court does not find any other allegation asserting that she complained to HUD about any other Defendant.

Telford also does not allege that any Defendant, including Star Valley Ranch, was even aware of her complaint made to HUD. Thus, Telford's factual allegations do not plausibly demonstrate that *all* Defendants retaliated against her by allegedly evicting her from her properties because Telford complained to HUD about Star Valley Ranch's conduct. Telford provides no factual allegations demonstrating a causal link between Telford's complaint to HUD and all Defendants' alleged eviction conduct.

Specific to Telford's residency in Star Valley Ranch, her allegations also suggest Star Valley Ranch did not evict her from her residence. Instead, she states a massive snow storm crushed her residence, and consequently, she had to vacate her residence due to all the unrepaired damage. (Doc. 10 at 14.) Thus, there are no factual allegations suggesting any Defendant evicted her because of her complaint to HUD.

Telford further alleges the "Montana, Utah and Wyoming housing providers COOKED the housing records" in violation of 42 U.S.C. § 3611(c)(2). (Doc. 10 at 28-29.) But Telford does not present factual allegations describing what any individual Defendant did to allegedly "cook" the housing records.

More importantly, section 3611(c)(2) is a provision of criminal law describing conduct that constitutes a criminal offense and imposing criminal

penalties. The statute itself does not provide a private right of action for a civil claim for relief. Telford's allegations under section 3611(c)(2) fail to state a claim upon which relief could be granted.

Telford alleges "Defendants Bailey, Motnaej and Star Valley Ranch engaged in additional section 3617 violations when they aided and abetted the criminal process against Plaintiff – to exercise extortive theft control over Plaintiff's properties after Plaintiff made her HUD complaints." (Doc. 10 at 29.) But Telford does not provide further facts describing what each Defendant did to allegedly aid and abet the criminal process, and she does not allege the Defendants engaged in any such conduct *because* she filed a HUD complaint against Star Valley Ranch. Telford's allegations do not state a viable claim for relief under section 3617.

Finally, Telford alleges "all defendants violated 24 C.F.R. § 100.7(a)(1)(iii) […] by failing to take prompt action to correct and end a discriminatory housing practices [sic] they knew were being committed by one another[.]" (Doc. 10 at 29.) But the Court finds Telford's allegations in her Second Cause of Action do not identify the specific discriminatory housing practice to which she refers, and they do not include facts demonstrating what each Defendant allegedly failed to do. Telford's factual allegations are insufficient to state a claim for relief based on the quoted regulation.

Telford's Third Cause of Action alleges Defendants Bailey, Motnaej and Star Valley Ranch engaged in conduct in violation of 24 C.F.R. § 100.600(a)(2). She alleges Defendants "evicted" her from her various dwellings and interfered with her access to utilities. (Doc. 10 at 30.) She also alleges Defendant Star Valley Ranch threatened her with repeated zoning violations and traffic citations, blocked her access to her driveway with snow, and engaged in other acts of harassment to "banish" her from her property. (*Id.*)

The referenced federal regulation states, in relevant part, as follows: "(2) Hostile environment harassment. Hostile environment harassment refers to unwelcome conduct that is sufficiently severe or pervasive as to interfere with: The availability, sale, rental, or use or enjoyment of a dwelling[.]" 24 C.F.R. § 100.600(a)(2). And the regulation prohibits hostile environment harassment based upon a person's "handicap." *Id*. Thus, to state a claim based upon a hostile housing environment under the Fair Housing Act due to discrimination based upon a handicap, a plaintiff must show that: (1) because of her handicap she was (2) subject to unwelcome conduct that was (3) sufficiently pervasive or severe to deprive her of the right to enjoy her home. *See Godwin v. City Redevelopment, LLC*, 2018 WL 3620482, *2 (D. Nev. 2018) (identifying elements of a hostile environment harassment claim based upon racial discrimination).

Here, Telford's allegations do not state that Defendants' alleged interference with her quiet enjoyment of her properties was "because of" a "handicap" Telford has. (Doc. 10 at ¶ 79.) And although Defendant Star Valley Ranch may have committed acts that were adverse to Telford, she does not allege it did so "because of" her handicap. (*Id*.) Thus, Telford's pleading fails to state a claim for hostile environment harassment under the Fair Housing Act.

## C. Equal Protection

In Telford's Fourth Cause of Action, she alleges Defendant Star Valley Ranch violated her equal protection rights protected under the Fourteenth Amendment to the United States Constitution. She alleges Star Valley Ranch receives federal funds for its water and road services, but that it applied the services to her in an unequal manner knowing she is disabled. (Doc. 10 at ¶ 83.) But for the reasons stated, the allegations fail to state a claim for relief.

Telford's allegations do not expressly identify or describe the nature of the entity that is the Defendant Town of Star Valley Ranch. But affording Telford the benefit of the doubt, the Court will assume Star Valley Ranch is a local municipal governmental entity in Wyoming, and that Telford's equal protection claim against Star Valley Ranch could be viable pursuant to 42 U.S.C. § 1983.

Section 1983 permits claims under federal law against a local governmental entity, or a state official or employee, if the plaintiff can establish that the defendant was (1) acting under color of state law, and (2) deprived the plaintiff of a federal right secured by the Constitution or laws of the United States. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

Local governmental entities, which the Court assumes Star Valley Ranch is, can be held liable under section 1983 (*Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978)), but only if "a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). *See also Monell*, 436 U.S. at 693-94.

> [I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 694.

To impose liability against a local government a plaintiff must demonstrate the existence of a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992)). The custom or practice must be "so 'persistent and widespread' that it

constitutes a 'permanent and well settled city policy.'" *Trevino*, 979 F.2d at 918

(quoting *Monell*, 436 U.S. at 691). Accordingly,

> [l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.

*Trevino*, 99 F.3d at 918 (citations omitted). Absent allegations demonstrating the

existence of a custom or practice followed by a local governmental entity, a claim

alleging a violation of equal protection rights is subject to dismissal. *Gerhart v.*

*Lake County, Montana*, 637 F.3d 1013, 1014, 1018-19 (9th Cir. 2011).

Here, Telford presents no allegations suggesting Star Valley Ranch followed

a custom, practice, or policy of violating individuals' equal protection rights in the

manner alleged by Telford. Therefore, her pleading fails to state a claim for the

violation of her equal protection rights under section 1983.

**D. Rehabilitation Act**

Telford's Fifth Cause of Action follows on the coattails of her Fourth Cause

of Action. She alleges Defendant Star Valley Ranch receives federal funds for its

water and road services. And she alleges it provided the services to her in a

discriminatory manner in violation of the Rehabilitation Act.

The Rehabilitation Act at 29 U.S.C. § 794(a) prohibits discrimination against

an individual based on a disability. To assert a cognizable disability discrimination

claim a plaintiff must establish she is "(1) an individual with a disability, (2) otherwise qualified and (3) subjected to discrimination solely by reason of [her] disability." *Mustafa v. Clark County School District*, 157 F.3d 1169, 1174 (9th Cir. 1998).

Telford's Fifth Cause of Action does not allege that Defendant Star Valley Ranch provided water and road services to her in a discriminatory manner *because* of her disability.

Furthermore, as noted with respect to Telford's equal protection claim, she does not present allegations suggesting Star Valley Ranch engaged in a custom, practice or policy of violating citizens' rights under the Rehabilitation Act in the manner alleged by Telford. Thus, her allegations fail to state a viable claim for relief under the Rehabilitation Act and 42 U.S.C. § 1983.

### E. Claims Under Montana Law

Telford's Sixth Cause of Action requests declaratory relief pursuant to 28 U.S.C. § 2201. She seeks a declaration establishing that her real property purchase agreement with Stosich is void on the basis that (1) the contract was modified through fraud and forgery without her consent, (2) the contract contains unenforceable ambiguous terms, and (3) the unlawfully modified or altered

contract is missing necessary material terms. Telford's challenges to the contract are necessarily based on Montana fraud and contract law, not federal law.

The federal Declaratory Judgment Act at 28 U.S.C. § 2201 "does not itself confer federal subject matter jurisdiction but merely provides an additional remedy in cases where jurisdiction is otherwise established." *City of Colton v. American Promotional Events, Inc. – West*, 614 F.3d 998, 1006 (9th Cir. 2010). Thus, independent subject matter jurisdiction must exist for Telford's declaratory judgment claims.

Because Telford's declaratory judgment claims assert matters under Montana law, the Court's federal question jurisdiction at 28 U.S.C. § 1331 does not provide jurisdiction for the claims. And Telford does not contend that diversity of citizenship jurisdiction under 28 U.S.C. § 1332 exists in this case. Therefore, the only remaining basis for jurisdiction is the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

But because Telford's declaratory judgment claims are advanced under Montana law, and since the Court recommends dismissal of all of Telford's other causes of action advanced under federal law, the Court further concludes it should exercise its discretion to decline supplemental jurisdiction over her remaining state law claims.

Federal law provides that where a district court has original jurisdiction in a civil action it shall also have supplemental jurisdiction over other claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). However, the district court may decline to exercise supplemental jurisdiction for various reasons stated in the statute, including when "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Supplemental jurisdiction under 28 U.S.C. § 1367(a) is discretionary, and courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors[...] including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims[.]" *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997).

Telford's claims under Montana law are matters of state and local concern, and should be resolved, in the first instance, by the courts of the State of Montana. Therefore, because the Court recommends dismissal of Telford's federal claims, the Court should decline to exercise supplemental jurisdiction over her state law claims, and those claims should be dismissed. 28 U.S.C. § 1367(c)(3).

## IV. Conclusion

Based on the foregoing, IT IS HEREBY RECOMMENDED that Telford's claims advanced under federal law should be DISMISSED pursuant to 28 U.S.C. § 1915(e)(2) for failure to state claims upon which relief could be granted. IT IS FURTHER RECOMMENDED that the Court should decline to exercise supplemental jurisdiction over Telford's claims advanced under Montana law.

Ordinarily, "[d]ismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988)). But, where a court previously notified a litigant of deficiencies in the initial allegations, and afforded the litigant an opportunity to amend the claims, if the litigant files an amended pleading which fails to cure the defects identified by the court, then the court may conclude that the deficiencies cannot be cured by further amendment and the court need not afford the litigant an additional opportunity to amend. *Kendall v. VISA U.S.A., Inc.*, 518 F.3d 1042, 1051-52 (9th Cir. 2008). A "repeated failure to cure deficiencies by amendments" is sufficient to justify a dismissal without leave to amend. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, by Order entered January 8, 2019, the Court noted deficiencies in Telford's original complaint. In particular, the Court stated that Telford's amended pleading must set forth only a short and plain statement of her claims showing that she is entitled to relief, and that she need not set forth lengthy and detailed allegations of facts. (Doc. 6 at 4.) But Telford's amended pleading is 35 pages in length with extensive details of unnecessary facts, and her pleading still fails to present short and plain statements of claims upon which relief could be granted, i.e. she has not presented the necessary facts in support of the specific claims for relief she asserts. Therefore, the Court recommends the dismissal of this action be without leave to amend.

DATED this 16th day of July, 2019.

Jeremiah C. Lynch
United States Magistrate Judge